UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

LINDA VEZINA                                    CIVIL ACTION NO. 07-0904
Individually and obo Kayla Vezina
TERRY VEZINA
Individually and obo Kayla Vezina                JUDGE MINALDI

VS.
                                                MAGISTRATE JUDGE METHVIN
UNITED STATES OF AMERICA

*RULING ON MOTION TO QUASH*
(Rec. Doc. 20)

Before the court is a motion to quash filed by Women & Children's Hospital, L.L.C.

Women & Children's provided a privilege log and plaintiffs responded.

This is a Federal Tort Claim Action (28 U.S.C. §1346(b), 2671-2680) brought by

plaintiffs for personal injuries suffered by plaintiff Linda Vezina when she was treated by

Dr. James Austin, an employee of the Department of Health and Human Services working at

Southwest Louisiana Center for Health Services and Women & Children's hospital in

March, 2004.  Plaintiffs requested documents concerning Dr. Austin's physician's file,

credentials, and peer review data from Women & Children's.

Women & Children's maintains that some of the documents requested in the Notice of

Records Deposition issued by plaintiffs are subject to privileges under the Healthcare Quality

Improvement Act, 42 C.F.R. § 11101, La. R.S. 13:3715.3, and/or Health Insurance Portability

and Accountability Act.   Women & Children's maintains that the documents sought include

privileged information concerning the credentials committee, peer review data, and patient

information.  After Women & Children's filed the instant motion to quash and privilege log,

2

plaintiffs withdrew requests for documents that were listed on the privilege log as concerning C-Sections because such documents were irrelevant.[1]

Because this suit is filed under the Federal Tort Claims Act, principles of federal common law apply to privilege issues:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

F. R. Evid. 501.

Accordingly, Louisiana privilege law (La. R.S. 13:3715.3) concerning production of patient information, physician files, credentials, and peer review data does not apply in this case. United States of America ex rel Stewart v. Louisiana Clinic, 2002 WL 31819130 (E.D.La. 2002). Moreover, there is no federal law prohibiting the production of this information.  Although Women & Children's argues that the Healthcare Quality Improvement Act and Health Insurance Portability and Accountability Act create privileges that protect the requested information from disclosure, it is clear that these Acts do not categorically prohibit production.

> HIPAA delegates to the Secretary of Health and Human Services broad authority to promulgate Standards for Privacy of Individually Indentifiable Health Information ("Standards"), with which health care providers must comply. The Standards generally permit a health care provider (called a "covered entity") to

---

[1] The documents that are no longer sought are those identified on the privilege log as Nos. 19, 20, 50, 51, 55, 56, 59-64, 67, 70, 74, 77, 80, 85, 89-92, 127, 128, 133, 135-138, 143, 144, 146, and 147.

3

disclose nonparty patient records during a lawsuit, subject to an appropriate
protective order, without giving notice to the nonparty patients.

Id. at p. 3 (citations omitted).[2]  Thus, patient information is entitled to the protection of a court

protective order, however, it is not prohibited from being produced.

Likewise, the Health Care Quality Improvement Act does not create a federal statutory

privilege prohibiting the disclosure of peer review materials.  In Robertson v. Neuromedical

Center, 169 F.R.D. 80, 83-84 (M.D.La. 1996), the court explained:

> There is no historical or statutory basis for a peer review materials privilege....
> The federal Health Care Quality Improvement Act of 1986, 42 U.S.C. § 11101, et
> seq., provides qualified immunity for persons providing information to a
> professional review body regarding the competence or professional conduct of a
> physician. 42 U.S.C. § 11111(a). It also established confidentiality for information
> reported under the act, but did not establish confidentiality for peer review records
> or protect peer review records and materials from discovery and court subpoena.
> The absence of such a privilege in this statute is evidence that Congress did not
> intend these records to have the level of confidentiality and protection advanced
> by the hospitals and provided in the state statute.

See also Poliner v. Texas Health Systems, 201 F.R.D. 437, 438 (N.D.Tex.2001); Syposs v.

United States, 179 F.R.D. 406, 410 (W.D.N.Y.1998); Rdzanek v. Hospital Service Dist. No. 3,

2003 WL 22466232 (E.D.La. 2003).  Although there is no federal privilege, it is clear that peer

review materials are sensitive and inherently confidential.  See 42 U.S.C. § 11101; see also

United States v. Harris Methodist Fort Worth, 970 F.2d 94, 103 (5th Cir.1992).

Accordingly, the documents sought which include information related to patients, peer

review data, credential committees, and Dr. Austin's physician's file are not prohibited from

being disclosed as privileged.  The undersigned has reviewed the documents submitted for in

---

[2] HIPAA does not preempt state law.  See 42 U.S.C. § 1320d-7(a)(1) and United States of
America ex rel Stewart v. Louisiana Clinic, 2002 WL 31819130 (E.D.La. 2002).

4

camera review and concludes that the information is relevant for discovery purposes, however, due to the clearly confidential nature of the information, the documents should be produced only within certain parameters.  Therefore, the documents produced shall be subject to the February 6, 2008 Stipulated Protective Order entered into by Women & Children's and plaintiffs.  The documents submitted for in camera review and subject to production qualify for the limitations placed on "extremely confidential" material in the Stipulated Protective Order, which prohibits disclosure to any person other than the parties' attorneys and staff, stenographers taking depositions, experts, and the court.[3]  Moreover, because some of the documents include patients' identities, which are irrelevant, the undersigned concludes that all references to patient names and/or patient numbers shall be redacted by Women & Children's prior to production.  Accordingly,

      **IT IS ORDERED** that the Motion to Quash is **DENIED**.

      **IT IS ORDERED** that Women & Children's shall redact patient-identifying information from the documents submitted for in camera review (minus the documents withdrawn for consideration by plaintiffs as irrelevant) and produce the documents to plaintiffs or before **April 3, 2008**.

---

[3] Rec. Doc. 29.

5

**IT IS FURTHER ORDERED** that the information to be produced is deemed extremely confidential and, therefore, the disclosure and use of the information shall be in accordance with the February 6, 2008 Stipulated Protective Order.

Signed at Lafayette, Louisiana, on March 27, 2008.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)