U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - LAKE CHARLES

JUN 0 3 2008

ROBERT H. SHEMWELL, CLERK
BY _____
       DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| LINDA VEZINA, Individually and obo Kayla Vezina, and TERRY VEZINA, Individually and obo Kayla Vezina | : | DOCKET NO. 2:07 CV 0904 |
| VS. | : | JUDGE MINALDI |
| UNITED STATES OF AMERICA. | : | MAGISTRATE JUDGE METHVIN |

### MEMORANDUM RULING

Women & Children's Hospital ("WCH") has filed an objection to Magistrate Judge Mildred Methvin's Ruling of March 28, 2008, regarding WCH's Motion to Quash. WCH argues that Magistrate Judge Methvin incorrectly applies the Healthcare Quality Improvement Act in lieu of La. R.S. 13:3715.3.

Standard

When a magistrate judge issues an order regarding a nondispositive pretrial matter, a party may issue an objection to the magistrate judge's order within ten days of the receipt of that order. Fed.R.Civ.P. 72(a). "The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate's order found to be clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a) (2007 rev.).

Facts

This is a Federal Tort Claim Action ("FTCA") (28 U.S.C. §1346(b)) brought by the plaintiffs for personal injuries suffered by the plaintiff, Linda Vezina, when she was treated by Dr. James

Austin, an employee of the Department of Health and Human Services working at the Southwest Louisiana Center for Health Services and WCH in March, 2004. The plaintiffs requested documents concerning Dr. Austin's physician's file, credentials, and peer review data from WCH. The magistrate judge denied the Motion to Quash filed by WCH and granted limited production.

Analysis

WCH asserts that several documents[1] are protected from discovery by La.R.S. 13:3715.3 as either being related to credentialing, quality assurance or some other function related to peer review.

The Federal Rules of Evidence provide one rule regarding privilege in the federal courts. Federal Rule of Evidence 501 provides in pertinent part:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience....

Fed.R.Evid. 501. Therefore, in federal question cases, state privilege law does not apply. *LeMasters v. Christ Hosp.*, 791 F.Supp. 188, 189 (S.D.Ohio, 1991); *von Bulow v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987).

The FTCA requires federal courts to look to the law of the state where the act or omission occurred in order to determine government liability. 28 U.S.C. § 1346(b). *Syposs v. United States*, 179 F.R.D. 406, 412 (W.D.N.Y. 1998). This does not mean, however, that for purposes of Rule 501 "state law supplies the rule of decision" in federal tort claims. *Menses v. United States Postal Service*, 942 F.Supp.1320, 1321 (D.Nev.1996). "Where the interests of the United States are

---

[1] Bates labeled WCH-000432 through WCH-000435.

2

directly affected and the issue or right being adjudicated derives from a federal source, federal courts have long recognized that federal laws rather than state laws govern unless Congress otherwise provides."*Id.* (citing 19 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction §§ 4514 and 4515). Rule 501 of the Federal Rules of Evidence sets forth a general rule that evidentiary privileges shall be governed by principles of the common law as interpreted by the federal courts.

Congress has recognized that "when federal courts merely adopt state law as federal law, there is no need to apply state law in matters such as the admissibility of evidence and claims of privilege, and that federal privilege law controls ... [i]t is only where state law is operative of its own force that state law supplies the rule of decision, and, under Rule 501, state privilege law governs." *Menses*, 942 F.Supp. at 1322. Under the FTCA, in which Congress established a forum where liability claims against the government could be pursued in accord with the local laws of the various states, the Supreme Court has held that the language of such a provision "assimilates into federal law the rules of substantive law of the several states." *Feres v. United States*, 340 U.S. 135, 142, 71 S.Ct. 153, 95 L.Ed. 152 (1950). Thus, as federal courts only adopt state law under the FTCA, "federal law still supplies the rule of decision under Rule 501 and state privilege law does not apply to Federal Tort Claims Act cases." *Menses*, 942 F.Supp. 1323-24. *See also Galarza v. United States of America*, 179 F.R.D. 291 (S.D.Cal.1998) (FTCA cases require the application of federal law as to privilege); *Young v. United States*, 149 F.R.D. 199, 202 (S.D.Cal.1993) ( "the legislative history of Rule 501 supports the conclusion that Congress intended federal privilege law to apply to Federal Tort Claims Act cases").

In *Young v. United States*, 149 F.R.D. 199, 202-04 (S.D.Cal.1993), the court examined the

legislative history of Rule 501 in finding that federal, not state, privilege law applies in determining the discovery of evidence in a FTCA case. In *Young*, the court explained that the House Judiciary Committee drafted the proposed Rule 501 in essentially the same form as it was enacted. With respect to the second sentence of Rule 501, the House Judiciary Committee intended to require the application of state privilege law in civil actions and proceedings governed by *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and explained that " '[t]he Committee believes that in civil cases in the federal courts where an element of a claim or defense is not grounded upon a federal question, there is no federal interest strong enough to justify departure from State policy.' " *Young*, 149 F.R.D. at 202 (quoting H.R.Rep. No. 650, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 7075, 7082-83).

When the House Committee circulated its version of Rule 501 for national review and comment, the Department of Justice raised the issue of the applicability of state privilege law in FTCA cases. The Department of Justice pointed out that as worded, the Rule did not limit dependence on state law solely to diversity actions. The Department of Justice wrote that:

> [t]his poses a real problem. There are thus statutes which make state law determinative in cases in which the United States may be a party ( *e.g., Federal Tort Claims Act* ). There is generally no reason in those instances to apply state law in matters regarding the admissibility of evidence and claims of privilege. Before a blanket rule applicable to all such cases is adopted, Congress should examine each of the instances in which state law is applicable to actions involving the United States and determine whether the policy considerations favoring uniformity of procedure in actions involving the United States should prevail. The last sentence of the rule should be amended to reflect these views.

*Young*, 149 F.R.D. at 203 (emphasis added) (quoting *Department of Justice Analysis and Recommendations Regarding Draft of Proposed Rules of Evidence of the Subcommittee on Criminal Justice, House Committee on the Judiciary*, H.R. 5463, 93d Cong., 1st Sess. 347 (1973) (statement

4

of William D. Ruckelshaus, Acting Deputy Attorney General)).

Although the Senate then proposed a bill that might have addressed these concerns, the Senate-House Conference ultimately adopted the House version of Rule 501. Although the Conference adopted the House version, the Conference responded to the concerns of the Department of Justice in the following statement:

> In nondiversity jurisdiction civil cases, federal privilege will generally apply. In those situations where a federal court adopts or incorporates state law to fill interstices or gaps in federal statutory phrases, the court generally will apply federal privilege law ... When a federal court chooses to absorb state law, it is applying the state law as a matter of federal common law. Thus, state law does not supply the rule of decision (even though the federal court may apply a rule derived from state decisions), and state privilege law would not apply.

*Young,* 149 F.R.D. at 203 (quoting Conf.Rep. No. 1597, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 7098, 7101).

In light of this statement, the court in *Young* concluded that Congress was aware of the privilege issue in the context of FTCA cases and "clearly stated its intent that Rule 501 require[s] application of federal privilege rules when the federal court is absorbing state law as the federal law." *Young,* 149 F.R.D. at 203-04; *accord Galarza v. United States,* 179 F.R.D. 291, 293 (S.D.Cal.1998) (Plaintiff brought suit under FTCA and, based on *Young,* court determined that federal law governed the application of privilege.); *Menses,* 942 F.Supp. at 1323-24 (D.Nev.1996) (The Court, citing the legislative history of Rule 501, concluded that "[b]ecause federal courts only adopt state law under the Federal Tort Claims Act, federal law still supplies the rule of decision under Rule 501 and state privilege law does not apply to Federal Tort Claims Act cases."); *Syposs v. United States,* 179 F.R.D. 406, 411 (W.D.N.Y.1998) (citing *Young*), *adhered to on reconsideration by Syposs v. United States* [*Syposs II*], 63 F.Supp.2d 301 (W.D.N.Y.1999). Stated differently, "Congress recognized that when

federal courts merely adopt state law as federal law, there is no need to apply state law in matters such as the admissibility of evidence and claims of privilege, and that federal privilege law controls. It is only where state law is operative of its own force that state law supplies the rule of decision, and, under Rule 501, state privilege law governs." *Menses,* 942 F.Supp. at 1322; *Tucker v. United States,* 143 F.Supp.2d 619, 622-624 (S.D.W.Va.. 2001).

As noted by the magistrate judge, there is no federal privilege prohibiting the production of the requested materials. The Health Care Quality Improvement Act of 1986 ("HCQIA"), 42 U.S.C. § 11101 *et seq.,* provides qualified immunity for persons supplying information to a professional review body regarding the competence or professional conduct of a physician. Congress had the opportunity in the drafting of the HCQIA to establish a privilege for peer review documents, but declined to do so. *Johnson v. Nyack Hospital,* 169 F.R.D. 550, 560-61 (S.D.N.Y. 1996); *Robertson v. Neuromedical Center,* 169 F.R.D. 80, 83-84 (M.D. La. 1996); *Swarthmore Radiation Oncology v. Lapes,* 1993 WL 517722, *2-4 (E.D.Pa. Dec. 1, 1993). As the court in *Teasdale v. Marin General Hosp.,* 138 F.R.D. 691, 694 (N.D.Cal.1991) (emphasis added), stated:

> the passage of a statute specifically addressing peer review issues and, indeed, the giving of qualified immunity to peer reviewers, is strong evidence that Congress not only considered the importance of maintaining the confidentiality of the peer review process, but took the action it believed would best balance protecting such confidentiality with other important federal interests. Congress spoke loudly with its silence in *not* including a privilege against discovery of peer review materials in the HCQIA.

*Tucker v.United States,* 143 F.Supp.2d 619, 626-627(S.D.W.Va., 2001).

The absence of a federal statute specifically addressing peer review issues does not mandate that La.R.S. 13:3715.1 should apply, as argued by WCH. *Morse v. Gerity,* 520 F.Supp. 470

(D.Conn.1981), cited by WCH in support of this argument, predates the enactment of the Health Care Quality Improvement Act and that ruling has been superseded by statute. *Syposs,* 179 F.R.D. at 410. *Morse* can be further distinguished from the case at bar as it was a pure medical malpractice action that did not raise federal questions, and was therefore governed by the underlying state laws, including rules of evidence. *Morse* is not relevant to the discussion here. *Leon v. County of San Diego,* 202 F.R.D. 631, 636 (S.D.Cal. 2001).

For the reasons set forth above, the magistrate judge's ruling on the Motion to Quash is affirmed.

Lake Charles, Louisiana, this ___3___ day of June, 2008.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE